UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| JON Q. WRIGHT and JQ LICENSING, LLC<br><br>Plaintiffs,<br><br>v.<br><br>YRD GENERAL STORE LLC, JAY TRUDEAU, and MARIANN TRUDEAU<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT<br><br>JURY TRIAL DEMAND |

**COMPLAINT**

Plaintiffs Jon Q. Wright and JQ Licensing, LLC ("JQW" or "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

**INTRODUCTION**

1. This action arises from Defendants' willful copyright infringement of two of Plaintiffs' copyrighted and valuable illustrations, registered under U.S. Copyright Registration No. VA-1-153-915 (hereinafter, "Legends Crappie") and VA-2-302-459 (hereinafter, "Crappie Brush 2") (collectively, Legends Crappie and Crappie Brush 2 are referred to herein as the "Subject Works"). Plaintiffs seek to obtain injunctive relief against Defendants YRD General Store LLC, Jay Trudeau, and Mariann Trudeau (collectively "Defendants") to stop their continuing infringement

1

and prevent any further unlawful infringement of the Subject Works. Defendants' infringements have damaged Plaintiffs' business and threaten to damage it further. Plaintiffs seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2.      Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and author of numerous fish illustrations, including the Subject Works, shown *infra*.

3.      Wright is the author and owner of the Subject Works.

4.      Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing"). Wright licenses his artwork exclusively through JQ Licensing.

5.      Defendant YRD General Store ("Y-Road") is a limited liability company formed and existing under the laws of the State of Missouri, with a principal place of business in Linn Creek, Missouri.

6.      Defendant Jay Trudeau ("Jay Trudeau") is an individual residing in Dardenne Prairie, Missouri.

7.      Defendant Mariann Trudeau (" Mariann Trudeau") is an individual residing in Dardenne Prairie, Missouri.

## JURISDICTION AND VENUE

8.      This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

9. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

10. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

<strong><u>PLAINTIFFS' WORK OF ART</u></strong>

11. In 2000, JQW authored Legends Crappie, which consists of a highly detailed depiction of a crappie fish, and is depicted directly below:



12. JQW duly registered Legends Crappie with the U.S. Copyright Office under Registration No. VA 1-153-915, as a collection of illustrations of different species of fish, all authored by Wright. This registration, entitled "Legends Series Artwork," has an effective date of June 1, 2001. A copy of the Legends Series Artwork registration, with the corresponding deposit materials, are attached as **Exhibit A**.

13. In 1989, JQW authored Crappie Brush 2, which consists of a highly detailed depiction of two crappie fish swimming through brush and is depicted immediately on the following page:



14. JQW duly registered Crappie Brush 2 with the U.S. Copyright Office under Registration No. VA 2-302-459, and has an effective date of May 2, 2022. A copy of the registration, with the corresponding deposit materials, are attached as **Exhibit B**.

15. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

16. In order to create his detailed fish illustrations, including the Subject Works, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

17. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the

fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

18. Only then does JQW begin the sketching process, referring to the photographs to painstakingly depict the precise details of the fish with detail paintbrushes.

19. JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

20. With each crappie fish within the Subject Works, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," swimming in freshwater, or to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

21. JQW's artwork has been painstakingly created, with each minute detail being depicted precisely in the artwork.

22. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

23. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

24. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

25. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## DEFENDANTS' INFRINGING CONDUCT

26. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

27. Defendant Y-Road is general convenience store. Since at least 2016, and as part of its marketing, business development, and community involvement efforts, Y-Road has organized fishing tournaments where individuals can pay an entry fee to participate in the tournament for a chance at winning a cash prize.

28. Y-Road organizes, operates, conducts, and hosts these fishing tournaments.

29. In order to promote, advertise, or otherwise market their fishing tournaments, Y-Road designed, created, and/or displayed two separate logos containing the Subject Works (the "Infringing Logos").

30. Y-Road published, reproduced, displayed, and/or distributed the Infringing Logos, as well as other advertising materials bearing the Infringing Logos, online on the Y-Road social media pages and on the Y-Road Website, as well as in person at the fishing tournaments and at Y-Road's physical store.

31. The material containing the Infringing Logos contain unlawful copies of at least one of the Subject Works and were each used to promote, market, and/or advertise each of Y-Road's fishing tournaments.

32. In the alternative, Y-Road caused the material containing the Infringing Logos to be designed, created, manufactured, distributed, and/or displayed by directing or instructing third parties, such as independent contractors, to perform the relevant act.

33. One of the Infringing Logos contains an exact, or virtually identical, copy of Legends Crappie.

34. An exemplar Infringing Logo containing Legends Crappie is reproduced directly below:



35. A comparison of Legends Crappie (left) and one of the Infringing Logos bearing Legends Crappie (right) is reproduced directly below:



36. The visual comparisons demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) positioning/placement of the fin, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the

7

crappie, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the crappie, and f) the highly specific spot pattern across the entire crappie.

37. Y-Road also used a second Infringing Logo that incorporated Crappie Brush 2. An exemplar Infringing Logo containing Crappie Brush 2 is reproduce directly below:



38. A comparison of Crappie Brush 2 (left) and the Infringing Logos bearing Crappie Brush 2 (right) is reproduced directly below, and demonstrates clear copying, but for trivial alterations in the direction of one crappie fish:

 

39. It is clear that Crappie Brush 2 was copied and incorporated into the background of the

8

Infringing Logo.

40. The crappie fish on the left side of Crappie Brush 2 was copied exactly, and placed on the left side of the background of the Infringing Logo.

41. The crappie fish on the right side of Crappie Brush 2 was copied exactly, but rotated and adjusted to face the opposite direction.

42. Directly below are images wherein the relevant portions of Crappie Brush 2 are overlayed the corresponding portions of the Infringing Logo, and set to 50% opacity so that the images are equally visible:

 

43. The visual comparisons demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) positioning/placement of the fin, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the crappie, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the crappie, and f) the highly specific spot pattern across the entire crappie.

44. Defendants Jay and Mariann Trudeau are the sole members, directors, officers, and/or shareholders of Y-Road and maintain exclusive control, management, and operation of Y-Road.

9

45. As part of Y-Road's marketing, promotional, or advertising efforts, Jay and Mariann Trudeau were personally involved or otherwise participated in the infringing acts described herein by, at the very least, one or more of the following infringing acts: (a) displaying or otherwise publishing the Infringing Logos to the Y-Road website and social media pages, and (b) displaying material bearing the Infringing Logos at in person events and at the Y-Road physical location; (c) instructing, directing, or otherwise causing the creation of the Infringing Logos and the material containing the Infringing Logos.

46. The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate the Subject Works, and the images and comparisons depicted herein are only exemplars.

47. Defendants' individual and joint infringing acts were undertaken to reap the creative and artistic benefit and value of the Subject Works.

48. By failing to obtain Plaintiffs' authorization to use Subject Works, or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit Subject Works, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

49. Defendants had access to the Subject Works, including, without limitation, through Plaintiff JQ Licensing's website and social media accounts or by viewing the Subject Works on third-party websites or third-party products.

50. JQW published Crappie Brush 2 onto the JQ Licensing online storefront on Pixels.com in 2013, and since that date, Crappie Brush 2 has not been displayed, offered for sale, or otherwise available to the public through any other source or location.

51. Defendants, or individuals acting on their behalf, accessed Crappie Brush 2 by copying the image directly from the Pixels.com storefront.

52. Despite notice of Plaintiffs' copyrights to the Subject Works, Defendants continue to display the Infringing Logos on their social media pages and website.

53. Defendants willfully misappropriated the Subject Works, and with blatant and reckless disregard for Plaintiffs' rights in and to the Subject Works, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

54. Defendants continuing acts of infringement after receipt of the Plaintiffs' notice of rights amounts to a blatant and reckless disregard for Plaintiffs' rights in and to the Subject Works.

55. As a result of Defendants' infringement of Plaintiffs copyrights in and to the Subject Works, Plaintiffs have suffered significant damage.  Specifically, Plaintiffs have lost royalties and licensing revenue and have suffered dilution and diminishment of the value of the Subject Works.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.*)

56. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

57. JQW is the sole owner of the Subject Works and holds valid copyright registrations in accordance with the United State Copyright Act.

58. The Subject Works are copyrightable subject matter under 17 U.S.C. §102(a).

59. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

60. JQW duly registered the copyrights in and to the Subject Works with the United States Copyright Office

61. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Works.

62. Upon information and belief, Defendants, and each of them, had access to the Subject Works through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject Works; and/or (c) viewing and/or downloading illegally reproduced, imported, and/or distributed copies of the Subject Works by third parties.

63. Access is also established by the striking similarity and/or identicality between the Subject Works and the artwork exploited by Defendants, precluding any possibility of independent creation.

64. As detailed *supra*., the Infringing Logos are respectively identical or virtually identical to Legends Crappie and Crappie Brush 2.

65. The crappie fish in both of the Infringing Logos are virtually identical to the crappie fish in the Subject Works as the Infringing Logos copy all or virtually all protectible elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a crappie fish, as described herein.

66. Defendants, and each of them, have infringed Plaintiffs' rights by copying the Subject Works and subsequently creating, making and/or developing directly infringing works and/or derivative works from the Subject Works.

67. Defendants, and each of them, were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Works.

68. Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

69. As a result of the acts of infringement, Defendants received tournament fees it would not have otherwise received, added brand value, and indirect sales and profits it would not have otherwise received.

70. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Works, in an amount to be established at trial.

71. Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

72. In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendants' negligent unauthorized use and copyright infringement.

73. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT)

74. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

75. To the extent that the Infringing Logos were created by a presently unknown third party, Defendants, and each of them, knowingly induced, participated in, aided and abetted in and profited from the illegal use of the Subject Works.

76. To the extent that the Infringing Logos were created by a presently unknown third party, Defendants, and each of them, are vicariously liable for the direct infringement alleged herein because these Defendants had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

77. Jay Trudeau and Mariann Trudeau, and each of them, have full control over, and final decision making authority, over the content of any marketing, advertising, or promotional material, including the Infringing Logos.

78. Jay Trudeau and Mariann Trudeau, and each of them, maintain a right and practical ability to stop or limit the direct infringement of presently unknown third parties, yet declined to do so, namely that they (a) were the controlling individuals for Y-Road; (b) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for Y-Road; (c) controlled the Y-Road social media pages and website and could publish and remove content, including infringing material

79. By publishing the Infringing Logos without performing basic due diligence and subsequently publishing the Infringing Logos, Jay Trudeau and Mariann Trudeau failed to exercise their right and ability to stop or limit infringing behavior.

80. Jay Trudeau and Mariann Trudeau had an obvious and direct financial interest in Y-Road's unlicensed copying, reproduction, distribution, and display of Infringing Logos as the same were used to promote, market, and advertise Y-Road's fishing tournaments, draw relevant individuals

to the Y-Road business and fishing tournaments, and collect tournament entry fees from participants, .

81. The Infringing Logos served as a "draw" for customers to participate in the Fishing Tournaments and necessarily, pay tournament entry fees.

82. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Works, in an amount to be established at trial.

83. Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Clarke to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

84. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

### COUNT III
**(Removal of Copyright Management Information – 17 U.S.C. §1202(b)(1))**

85. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

86. JQW affixed his name on the bottom right-hand corner of Crappie Brush 2.

87. JQW's name is copyright management information.

88. In creating the Infringing Logo featuring Crappie Brush 2, Defendants removed copyright management information from the Subject Work, namely, JQW's name.

89. JQW did not grant Defendants authority or permission to remove his name from Crappie Brush.

90. Defendants intentionally removed JQW's name from Crappie Brush 2 through the use of image editing software and then affixed the cropped copy of Crappie Brush 2 within the Infringing Logo.

91. Defendants knew, or had reasonable grounds to know, that the removal of JQW's name would induce, enable, facilitate, or conceal Defendants' infringement of Crappie Brush 2.

92. Upon information and belief, Defendants Jay Trudeau and Mariann Trudeau are familiar with copyright laws by virtue of their professional experiences in owning and operating a variety of different e-commerce and brick-and-mortar retail clothing businesses that predominantly sell clothing bearing intellectual property of third-parties.

93. Upon information and belief, Defendants Jay Trudeau and Mariann Trudeau have also taken affirmative steps to protect themselves and their other businesses entities from intellectual property claims, demonstrating an understanding of copyright laws.

94. As a direct and proximate result of Defendants' removal of JQW's name, JQW has been damaged in an amount to be established at trial.

95. JQW is entitled to, and seeks to recover from Defendants, statutory or actual damages, as permitted under 17 U.S.C. § 1202, *et seq*.

96. Pursuant to 17 U.S.C. § 1203(b)(5), JQW is entitled to and seeks to recover his reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests judgment against Defendants, and each of them, as follows:

A.  that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Works as contemplated by 17 U.S.C. §504(c)(2);

B.  alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Works, pursuant to 17 U.S.C. § 501;

C.  that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to the Subject Works;

D.  impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Works, pursuant to 17 U.S.C. §503(b);

E.  that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.  that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.  that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.  that Plaintiffs be awarded the costs of this action; and

I. that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date:  December 28, 2023

By: /s/ Dmitry Lapin
Dmitry Lapin, Esq. (329670PA)
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570

*Attorney for Plaintiffs Jon Q. Wright, and JQ Licensing, LLC*